FILED

2024 Aug-01  AM 10:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **CINDY LOUISE CLARK** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **4:22-cv-01057-LSC** |
| **MARTIN O'MALLEY,** | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

On July 24, 2023, Cindy Clark ("Clark" or "Plaintiff") filed with the Clerk of this Court a complaint against the Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). (Doc. 1.) Clark appeals the Commissioner's decision denying her claim for a period of disability and disability insurance benefits ("DIB"). (Doc. 11.) Clark timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

### II.    Background

Clark has an eleventh-grade education and later received a GED. (Tr. at 30.) She did not receive any specialized job training or any other education. (*Id.*)

A Vocational Expert ("VE") stated her previous work was as a caregiver in an assisted living facility. (*Id.*) She also served as an assistant manager of a lunchroom. (*Id.*) She was forty-six years old at the time of her application for a period of disability and DIB on June 29, 2012. (Tr. at 20.) Clark's application for benefits alleged a disability onset date of June 1, 2012. (*Id.*)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for a period of disability and DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will

result in a finding of not disabled. *Id*. The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the claimant was not disabled).

Similarly, the third step requires the evaluator to consider whether the claimant's impairment or combination of impairments meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id*.

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the claimant has the RFC to perform the requirements of her past relevant work ("PRW"). *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent her from performing her PRW, the evaluator will make a finding of not disabled. *Id*.

The fifth and final step requires the evaluator to consider the claimant's

RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Id.* at §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") first established that Plaintiff has not engaged in SGA since her alleged disability onset date, June 1, 2012. (Tr. at 15.) Next, the ALJ found that Plaintiff's fibromyalgia, degenerative disc disease, degenerative joint disease, obesity, somatization disorder, anxiety disorder, depression, and posttraumatic stress disorder qualify as "severe impairments." (*Id.*) However, the ALJ also found that these impairments neither meet nor medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Following this determination, the ALJ established that Plaintiff has the following RFC: "[T]o perform light work as defined in 20 C.F.R 404.1567(b) and 416.967(b), except she is limited to unskilled work and only occasional or superficial interaction with the public." (Tr. at 17.) Both 20 C.F.R. §§ 404.1567(b) and 416.967(b) define light work as:

Light work involves lifting no more than 20 pounds at a time with

frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Relying on the testimony of a VE, the ALJ determined that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant can perform." (Tr. at 20.) From these findings, the ALJ concluded the five-step evaluation process by stating that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from June 1, 2012," Plaintiff's original alleged disability onset date, to March 20, 2015, the date of the ALJ's first decision. (Tr. at 21.)

## III.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013)

(citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided that those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for the Commissioner's. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'r*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *See Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in

its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982), *superseded on other grounds by Harner v. Comm'r of Soc. Sec.*, 38 F.4th 892 (11th Cir. 2022)).

## IV.   Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for two reasons: 1) the ALJ improperly substituted her own lay opinion for those of the medical experts, and 2) the ALJ failed to develop a full and fair record. (Doc. 12 at 3.) After a thorough review, we affirm the ALJ's decision.

### a. Alleged Error for Improper Substitution of ALJ Opinion for the Opinion of Medical Experts

Clark contends that the ALJ improperly dismissed the opinions of several mental health experts, including her treating physician and a consulting physician who examined her at the SSA's request.[1] (Tr. at 422–25; Doc. 12 at 4.) Clark argues that the ALJ gave little or no weight to substantial evidence of her

---

[1] The treating physician rule has since been rescinded. However, it applies in this case because it was originally filed in 2012, with the new regulations only taking effect for cases filed after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298 (Mar. 27, 2017).

mental impairments and based the RFC determination solely on her own lay interpretation of the medical data. (Doc. 12 at 4.)

The SSA regulations dictate that an ALJ must give controlling weight to a treating physician's opinion if medically acceptable clinical and laboratory diagnostic techniques support it and it is not inconsistent with other substantial evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "The ALJ may not make medical findings [them]self." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016). The testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician . . . [w]here the ALJ clearly articulates specific reasons for failing to give a treating physician's opinion controlling weight, no reversible error exists." *Pate v. Comm'r of Soc. Sec.*, 678 F. App'x 833, 834 (11th Cir. 2017). Additionally, good cause arises "where the evidence failed to bolster the doctor's opinion, the evidence supported a contrary finding, or the doctor's opinions were conclusory or inconsistent with his own medical records." *Id.* (citing *Lewis*, 125 F.3d at 1440). However, "it is generally improper for an ALJ to substitute his own judgment for that of a medical expert because, among other reasons, ALJs are not medical experts." *Brightmon v. Comm'r of Soc. Sec.*,

743 F. App'x 347, 353 (11th Cir. 2018). This is especially important in cases involving mental impairments. *Barber v. Barnhart*, 459 F. Supp. 2d 1168, 1173 (N.D. Ala. 2006).

However, the Court recognizes the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d).

### i.  Consultative Physician

The SSA requested that Dr. Stephens examine Clark on January 25, 2017, and February 23, 2017. (Tr. at 422, 1330–34.) Dr. Stephens administered the Weschler Adult Intelligence Scale-IV, where Clark received a Full-Scale IQ of 61, which is considered below the average range. (Tr. at 422.) While Dr. Stephens noted that Clark was "cooperative and put forth effort on the tests . . . [d]epression likely suppressed her scores somewhat; her scores are likely valid indicators of her current level of functioning, but likely underestimate her true ability, given that she can drive and has held down several jobs." (Tr. at 1339.) Dr. Stephens further opined on Clark's intellectual ability, ability to carry out simple instructions, and the ability to get along with others. (Tr. at 1339–40.)

Generally, an ALJ must state with particularity the weight given to different medical opinions. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). However, an ALJ is not required to mention every piece of evidence explicitly as long as the decision does not broadly dismiss the medical condition in its entirety. *See Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005). Also, "[u]nlike the opinions of a treating physician, the opinions of an examiner are not entitled to substantial or considerable weight." *See Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986).

Here, Dr. Stephens was seen as a consultative physician, not a treating physician, and the ALJ did not implicitly or explicitly reject her medical opinions. Instead, Dr. Stephen's opinions regarding Clark's "ability to understand, remember, and carry out instructions and interact with others" were given credible weight in the ALJ's decision. (Tr. at 422.) The ALJ noted that at the mental examination, the claimant could recall words after a five-minute delay and even recall her last two evening meals. (Tr. at 423.) The ALJ also noted that Clark's remote memory was intact, that she could drive a car, and that she has past relevant skilled work. (*Id.*) The claimant told Dr. Stephens she had friends, although she does little with them besides talking on the phone. (*Id.*)

Even though the ALJ rejected Dr. Stephen's opinions on Clark's

"concentration, persistence, and maintaining pace and adapting or managing oneself," the ALJ supported her findings with substantial evidence. This evidence included that at the time of consultation, Clark's depression was untreated, and she was not taking any anti-depressant medication or going to therapy. (*Id.*) The ALJ notes that Clark's treatment records show no objective evidence of deficits in concentration, persistence, and maintaining pace or adapting or managing oneself. (*Id.*)

In conclusion, because an ALJ is not required to give substantial or considerable weight to consulting physicians, the ALJ considered the opinion of Dr. Stephen, and it was not outright rejected; no error exists.

### ii. Treating Physician

Next, Clark contends that the ALJ erred by rejecting the opinions of Dr. Fantz, Clark's treating physician, without good cause. As written above, a treating physician's opinion must be given substantial weight unless "good cause" demonstrates something contrary. *Crawford*, 363 F.3d at 1159. An ALJ may reject the opinion of a treating physician under three circumstances: (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "We will not second guess

the weight given a treating physician's opinion so long as the ALJ articulates a specific justification." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

While an ALJ may choose to reject a treating physician's findings when there is good cause, "he 'must clearly articulate [the] reasons' for doing so." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (alteration in original) (quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004). If the ALJ fails to state reasonable grounds for discounting such evidence, we will not affirm "simply because some rationale might have supported the ALJ's conclusion." *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). It is the responsibility of the agency, not the reviewing court, to supply the justification for its decision and to sufficiently explain "the weight [it] has given to obviously probative exhibits." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)).

The more supportable and consistent a medical opinion is, the more weight the ALJ affords it in her determination. *Adams v. SSA*, No. 23-11233, 2024 WL 2846726 (11th Cir. June 5, 2024). An ALJ may give a treating physicians' findings less weight if they are inconsistent with the medical evidence provided in the record. *Easley v. SSA, Comm'r*, No. 21-13389, 2023 WL

4105563 (11th Cir. June 21, 2023); *See also Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004).

The ALJ gave two reasons for assigning Dr. Fantz's opinion little weight. First, the ALJ noted that Dr. Fantz's opinion was not supported by objective or other substantial evidence in the record. (Tr. at 423.) The ALJ points to Dr. Fantz's treatment records and their lack of documentation of exam findings, particularly objective evidence of abnormalities. (*Id.*) Second, the ALJ noted that Dr. Fantz did not perform any psychiatric examinations in the twelve months leading up to the completion of the medical source statement. (*Id.*) While the statute instructs the ALJ to make every reasonable effort to obtain medical records from the individual's treating physician "the Act does not specify how this evidence is to be weighed." *Harner v. SSA*, 38 F.4th 892 (11th Cir. 2022) (quoting 42 U.S.C. § 423(d)(5)(B)). Here, the ALJ chose to give more weight to the lack of any psychiatric examinations. Additionally, while an ALJ is required to discuss consistency, an ALJ's opinion should be read as a whole and "need not repeat a discussion of the facts that establish inconsistency . . ." *Adams v. SSA*, No. 23-11233, 2024 WL 2846726 at *3 (11th Cir. June 5, 2024). The ALJ indicated that the lack of any examinations by Dr. Fantz in the twelve months prior to completing the medical source statement, including a "mini-mental status exam" aided in the decision to give less weight to the physician's findings.

(Tr. at 424.)

Second, the ALJ noted that Dr. Fantz was a primary care doctor and that the opinions regarding Clark's limitations due to her mental impairments are not related to his area of specialty. (Tr. at 423.) An ALJ "generally give[s] more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." *Peterson v. Comm'r of SSA*, 4:16-cv-00080-JHE, 2017 WL 1146928 (N.D. Ala. Mar. 17, 2017) (where the ALJ properly considered the physicians lack of specialization). Again, the more supportable and consistent a medical opinion is, the more weight the ALJ affords it in their determination. *Adams v. SSA*, No. 23-11233, 2024 WL 2846726 (11th Cir. June 5, 2024).

The ALJ determined that Dr. Fantz opinion was to be given little weight because the opinions are not supported by objective evidence and are inconsistent with other evidence provided in the record. Both of which reasons are sufficient to show good cause. The ALJ thus provided sufficient reasons that meet the good cause standard for giving Dr. Fantz's opinion less weight as one of Clark's treating physicians. Therefore, the ALJ did not err.

### b. Alleged Error of ALJ Failing to Perform Her Duty to Fully and Fairly Develop the Record as to the Claimant's Mental Impairments

Clark contends last that the ALJ failed to acknowledge a portion of Dr.

Stephen's opinion regarding the claimant's ability to understand, remember, and carry out instructions and interact with others. (Doc. 12)

In the RFC, the ALJ interpreted Dr. Stephen's use of the word "usually" to mean that Clark could tolerate occasional interaction with coworkers, supervisors, and the public. (Tr. at 409.) Clark argues that the ALJ had a duty to clarify Dr. Stephen's opinion about Clark's ability to be around and get along with others. (Doc 12 at 15.) Clark contends that this term is ambiguous, and the ALJ wrongly interpreted the term and had a duty to re-contact Dr. Stephens to clarify the word as the word "usually" could mean "how many days would [Clark] likely be unable to get along with others and/or accept direction?" (*Id.*) Additionally, Clark cites *Washington v. Comm'r of Soc. Sec.* to argue that the ALJ failed to develop the record in the case. This case has no bearing, as its focus on appeal was resolving conflicts between the Dictionary of Occupational Titles and Vocational Expert testimony.

Since a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. *See Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). Since Clark is represented by counsel in this matter, no special duty exists for the hearing examiner to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, and to be especially diligent in ensuring that favorable and unfavorable facts are

elicited." *Cowart,* 662 F.2d at 735. However, there must be a showing of prejudice before it's found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the ALJ for further development of the record. *See Brown v. Shalala,* 44 F.3d 931, 934-35 (11th Cir. 1995). The court should be guided by whether the record reveals evidentiary gaps which result in unfairness, or "clear prejudice" *Id.* Prejudice requires a showing that "the ALJ did not have all of the relevant evidence before him in the record, or that the ALJ did not consider all the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

Here, Clark has fallen short in showing that the ALJ failed to fully and fairly develop the record, as the record as a whole is neither incomplete nor inadequate. The record was sufficient for the ALJ to evaluate Clark's mental impairments and does not show the kind of gaps in the evidence that rise to the level of prejudice. The ALJ thoroughly considered the opinion of Dr. Stephens, and it is not the duty of the Court to reweigh the evidence before the ALJ. Put in a different context, the extent to which the Plaintiff disagrees with the ALJ's interpretation of that evidence is not grounds for remand. *Warren v. Kijakazi*, No. 1:21-cv-00185-CWB, 2023 WL 4223523 (M.D. Ala. Jun. 27, 2023). Thus, no error exists because the Court finds the ALJ's RFC determination was adequate.

## V.    Conclusion

Upon review of the administrative record and considering Plaintiff's argument, this Court finds that the ALJ's decision is supported by good cause. For the foregoing reasons, this Court AFFIRMS the ALJ's decision. A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on August 1, 2024.

L. Scott Coogler
United States District Judge

215708